FILED

1   KING, HOLMES, PATERNO & BERLINER LLP
    HOWARD E. KING, ESQ., STATE BAR No. 077012
2   STEPHEN D. ROTHSCHILD, ESQ., STATE BAR No. 132514
    ROTHSCHILD@KHPBLAW.COM
3   1900 AVENUE OF THE STARS, 25TH FLOOR
    LOS ANGELES, CALIFORNIA 90067-4506
4   TELEPHONE: (310) 282-8989
    FACSIMILE: (310) 282-8903
5
    Attorneys for Plaintiff
6   ANDRE YOUNG pka DR. DRE

10 FEB 11 PM 2:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

7

8             UNITED STATES DISTRICT COURT

9       FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 | ANDRE YOUNG pka DR. DRE, an | CASE NO. **CV 10- 01019**-CAS(JEMx)
12 | individual, |
| | **COMPLAINT** for
13 |       Plaintiff, | 1) Breach of Contract
| | 2) False Advertising
14 | vs. | 3) Trademark Infringement
| | 4) Trademark Dilution
15 | WIDEAWAKE DEATH ROW | 5) Misappropriation of Common Law
| ENTERTAINMENT LLC, a limited |     Right of Publicity
16 | liability company; WIDEAWAKE | 6) Violation of California Civil Code
| ENTERTAINMENT GROUP, INC., a |     Section 3344
17 | corporation; WIDEAWAKE HOLDING | 7) Unfair Competition
| COMPANY, INC., a corporation; and | 8) Constructive Trust
18 | DOES 1 through 10, inclusive, |
| | **DEMAND FOR JURY TRIAL**
19 |      Defendants. |

20

21       Plaintiff Andre Young p/k/a Dre ("Dr. Dre" or "plaintiff") hereby alleges as

22   follows:

23        1.     Plaintiff is an internationally renowned and immensely popular

24   composer, producer, recording artist and performer, with an excellent reputation

25   among the public and the critical community for his music. His critically acclaimed

26   and commercially successful works include his classic debut solo album "Dr. Dre

27   The Chronic" ("*The Chronic*"), released in or about November 1992 on the record

28   label he co-founded, Death Row Records, Inc. ("Death Row").

1        2.      Dr. Dre made a well-publicized escape from Death Row in 1996,

2   leaving the record label with limited rights to continue to exploit *The Chronic*, and

3   no other Dr. Dre recordings, subject to the obligation of Death Row to pay royalties

4   for use of those rights.  From 1996 until Death Row's descent into bankruptcy, not a

5   dime of royalties had been paid.

6        3.      In 2009, Death Row's music catalogue, including rights and obligations

7   relating to *The Chronic*, was transferred through a federal bankruptcy proceeding to

8   WIDEawake Entertainment, a purchaser that promised a new era of Death Row

9   Records actually paying royalties to its artists and honoring its other commitments.

10       4.      Specifically, the CEO of the supposedly new and improved Death Row

11  Records stated:  "I don't think anyone could do as bad as the last guy.  Failure to

12  provide royalties and whatever craziness went on, that's not my way.  It's ethically

13  wrong.  I can't do that," promised Lara Levi, CEO of WIDEawake Entertainment.

14       5.      Notwithstanding the rhetoric, this was another example of "meet the

15  new boss, same as the old boss."  Dr. Dre has <u>never</u> been paid, either by Defendants

16  or their predecessors.  Defendants have also released to the public a Dr. Dre album

17  entitled *The Chronic Re-Lit*, as well as a "Greatest Hits" album, without

18  authorization.  Neither Defendants nor their predecessors have honored a word of

19  their agreements with Dr. Dre.  This lawsuit is to make sure that Defendants don't

20  forget about Dre.

21       6.      Whether you get thugged or the check just doesn't come, it's all the

22  same – someone else has your money.  And whether it's a platitude-spouting, self-

23  proclaimed soccer mom or a supposed gangster who isn't paying you, it doesn't

24  change the fact that you're not getting paid.

25       7.      "Things just ain't the same for gangsters … I've seen them come, I've

26  watched them go … watched the lawsuits when they lost the dough … I just sit back

27  and watch the show …" – Dr. Dre, plaintiff.

28  / / /

# THE PARTIES

8.      Plaintiff is informed and believes and based thereon alleges that defendant WIDEawake Holding Company Inc. ("WHC") is a corporation organized and existing under the laws of Canada, with its principal place of business in Toronto, Canada.

9.      Plaintiff is informed and believes and based thereon alleges that defendant WIDEawake Entertainment Group Inc. ("WEG") is a business entity with its principal place of business in Toronto, Canada; that WHC owns and controls WEG; and that WHC conducts business through and as WEG.

10.      Plaintiff is informed and believes and based thereon alleges that defendant WIDEawake Death Row Entertainment LLC ("WDRE") is a business entity with its principal place of business in Toronto, Canada; that WHC and WEG own and control WDRE; and that WHC and WEG conduct business through and as WDRE.

11.      Plaintiff is informed and believes that Lara Lavi ("Lavi") is an individual residing in Toronto, Canada and a citizen of the State of Washington; formerly an attorney practicing in the State of Washington with expertise in intellectual property, publicity and contractual rights such as those at issue herein; and the Chief Executive Officer and an owner of WHC, WEG and/or WDRE.

12.      Plaintiff sues Does 1 through 10, inclusive, herein under fictitious names.  Plaintiff does not know their true names and capacities.  When plaintiff ascertains the Doe defendants' true names and capacities, plaintiff will amend this complaint by inserting their true names and capacities herein.  On information and belief each defendant named herein as a Doe acted with the other defendants and is responsible for the damages to plaintiff herein alleged.  Each reference in this complaint to defendants, or to any of them, also refers to all defendants sued under fictitious names.

/ / /

13.     On information and belief, at all times material herein, WDRE and WEG were the alter egos of WHC, and there exists and has existed at all times material herein a unity of interest and ownership between and among them, such that any separateness between or among them has ceased to exist, and WDRE and WEG are mere shells, instrumentalities, and conduits through which WHC and Lavi have at all times material herein carried out their business, exercising complete control and dominance over them such that any individuality or separateness between or among them has ceased to exist.

14.     WGC, WEG and WDRE are referred to collectively hereinafter as "defendants".

15.     Adherence to the fiction of the separate existence of WHC, WEG and WDRE as entities distinct from each other would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

16.     On information and belief at all times material herein each of the defendants was the agent and employee of the other defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

## JURISDICTION AND VENUE

17.     <u>Jurisdiction</u>.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that plaintiff seeks relief against defendants under the Lanham Act, 15 U.S.C. § 1114 et seq., and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any claims arising under state law because those claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. section 1332(a)(1) and (2) because the instant action is between citizens of a State and citizens or subjects of a foreign state and/or of a different State and the amount in controversy exceeds

1    $75,000 exclusive of interest and costs.

2        18.   <u>Venue</u>.  Venue lies within this district pursuant to 28 U.S.C. section

3    1391(b)(2) because a substantial part of the events and omissions giving rise to

4    plaintiff's claims alleged herein occurred in this district; and pursuant to 28 U.S.C.

5    section 1391(d), because three of the defendants herein are aliens.

6            **FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF**

7        **A.    Formation of Death Row and the 1991 Agreement, and Plaintiff's**

8            **Recordings with Death Row Including *The Chronic***

9        19.   In 1991, plaintiff and non-party Marion "Suge" Knight ("Knight")

10   founded Death Row to produce phono records in the rap music genre.  Plaintiff

11   initially held a 50% ownership interest in Death Row.

12       20.   In 1991 and 1992, plaintiff created, produced, and was the principal

13   performer on all master recordings embodied on *The Chronic*.

14       21.   Prior to March 14, 1996, plaintiff also produced, and composed and

15   performed on, songs appearing on other Death Row-released sound recordings in

16   addition to *The Chronic*, including, but not limited to, the albums *Doggystyle*, *Above*

17   *the Rim* and *Murder Was the Case*, the 2Pac song "California Love," and others

18   (collectively, the "Dre Recordings").

19       22.   When plaintiff and Knight formed Death Row in 1991, plaintiff orally

20   and impliedly granted Death Row a non-exclusive license to release sound

21   recordings that he produced, composed and/or performed on in exchange for Death

22   Row's payment to him of applicable artist's royalties, mechanical royalties, and

23   producer royalties in amounts commensurate with his status in the music industry,

24   except as the parties might otherwise agree (the "1991 Agreement").

25       **B.    The 1992 Agreement**

26       23.   In or about Fall 1992, plaintiff granted Death Row a non-exclusive

27   license to distribute *The Chronic* in exchange for Death Row's agreement to pay

28   him a royalty of 18% of the suggested retail price on all copies sold of *The Chronic*

1  ("*The Chronic* Royalties") (the "1992 Agreement").

2      24.   As part of the 1992 Agreement, Death Row also agreed to pay plaintiff

3  a royalty of 4% of the suggested list retail price of all sound recordings that plaintiff

4  produced for artists signed to Death Row (the "Producer Royalties").

5      **C.**    **The 1996 Agreement**

6      25.   On or about March 14, 1996, plaintiff, Knight and Death Row entered

7  into a written agreement (the "1996 Agreement"), a copy of which is attached hereto

8  as Exhibit "1" and incorporated herein by reference, pursuant to which:

9          a.    Plaintiff relinquished his 50% ownership interest in Death Row;

10          b.    Plaintiff quitclaimed to Death Row his copyrights in sound

11  recordings previously released by Death Row, including *The Chronic* and the Dre

12  Recordings (the "Copyrights"), subject to the condition that "unless the parties

13  hereto otherwise agree in writing, the foregoing master recordings shall only be

14  distributed in the manners heretofore distributed;" and

15          c.    Death Row agreed to pay plaintiff *The Chronic* Royalties, the

16  Producer Royalties, and all other royalties due and to become due to him from and

17  after January 1, 1996 under the 1991 and 1992 Agreements, or otherwise.

18      26.   Pursuant to the 1992 and 1996 Agreements, plaintiff relinquished to

19  Death Row the master recordings and copyrights of *The Chronic*, *Doggystyle*,

20  *Murder Was the Case* and *Above the Rim*, and the other Dre Recordings theretofore

21  released by Death Row (collectively, the "Copyrights").

22      27.   The 1996 Agreement effected the transfer of the Copyrights to Death

23  Row.  At the same time, it strictly circumscribed the ways in which Death Row was

24  permitted to exploit the *The Chronic*.  Such terms are consistent with custom and

25  practice in the music industry.  They allow the parties to complete a copyright

26  transfer, while prohibiting certain types of future exploitation or deferring

27  negotiations over particular uses of the copyright that the transferor, at the time of

28  the transaction, wishes to control.  If the transferee desires to engage in such uses in

KING, HOLMES,
PATERNO
& BERLINER LLP

1  the future, it must negotiate with the transferor for them at that time.  Such terms are

2  critical to artists because they enable the artists to retain control over how, when and

3  the terms pursuant to which their creative output is presented to the public.

4       28.    At the time of the 1996 Agreement, *The Chronic* and the Dre

5  Recordings had been distributed on vinyl records, cassette audiotapes and compact

6  discs, with the same artwork, recordings, masters and mixes as their earlier releases,

7  and in no other manner, medium or configuration.  Specifically, Death Row had no

8  rights to distribute *The Chronic* digitally or in any other configuration.

9  **D.    The Death Row Bankruptcy and Defendant's Acquisition of The**

10        **Copyrights Subject to the 1991, 1992 and 1996 Agreements**

11       29.    In or about April 2006, Death Row filed for bankruptcy protection in

12  the United States Bankruptcy Court for the Central District of California under

13  Chapter 11 of the United States Bankruptcy Act.

14       30.    On or about January 15, 2009, at an auction at the United States

15  Bankruptcy Court for the Central District of California, defendants purchased Death

16  Row and its assets, including the copyrights to *The Chronic* and the other Dre

17  Recordings, subject to the 1991, 1992 and 1996 Agreements and the conditions and

18  limitations therein.

19  **E.    Plaintiff's Notice to Defendants of the Conditions and Limitations**

20        **in the Agreements between Dr. Dre and Death Row, and**

21        **Defendants' Subsequent Release of "Re-Lit" in Intentional**

22        **Violation of Plaintiff's Rights**

23       31.    In Spring 2009, including, but not limited to, in telephone

24  conversations and personal meeting with and in a detailed June 16, 2009 email to

25  Lavi, plaintiff's counsel expressly and specifically notified defendants of their

26  contractual obligations to plaintiff, including that the 1996 Agreement prohibited

27  defendants from releasing *The Chronic* in any manner in which it was not

28  distributed prior to the 1996 Agreement.

32. Plaintiff is informed and believes that defendants were already aware of those limitations including, but not limited to, as a result of their due diligence before purchasing the Death Row assets.

33. Among other things, plaintiff notified defendants, in writing, that the 1996 Agreement prohibited defendants from digitally distributing or recompiling *The Chronic* or licensing any of the recordings thereon for use by third parties. Defendants also reminded defendants that, as they already knew, they had no right to use plaintiff's name, likeness, voice or performances (other than as specifically allowed under the 1996 Agreement) for any purpose.

34. In the June 16, 2009 email, plaintiff proposed terms under which he would permit defendants to exploit *The Chronic* in manners beyond those permitted under the 1996 Agreement, including to digitally distribute the album.

35. Defendants ignored plaintiff's proposal.

36. On or about August 31, 2009, defendants released and commenced distributing and selling throughout North America, including, but not limited to, in this District, an album and DVD entitled *The Chronic Re-Lit & From the Vault* ("*Re-Lit*").

37. *Re-Lit* and defendants' exploitation of it, perpetrated after attorney Lavi received actual notice of plaintiff's rights and his non-consent to any such use, is a brazen disregard of plaintiff's intellectual property rights; a calculated breach of the 1996 Agreement; a willful violation of plaintiff's rights to his name and likeness, and his trademark, "Dr. Dre" (the "Mark"); and a fraud on the public, including, but not limited to, as follows:

a. *Re-Lit* uses *The Chronic* to foist on an unsuspecting public an unauthorized version of *The Chronic*, miscellaneous advertisements, and sound recordings that plaintiff did not endorse.

b. Without plaintiff's permission, the cover of *Re-Lit* consists almost entirely of plaintiff's Mark, name and likeness, in an effort to fool the public

1  into believing that he endorsed defendants' wrongful release of *The Chronic* on *Re-*
2  *Lit*, to falsely associate plaintiff with the fraudulent "remix" of *The Chronic*, and
3  generally to falsely associate plaintiff with the wrongful release.

4          c.    *Re-Lit* incorporates *The Chronic* with different material than the
5  original release, in breach of the express limitations in the 1996 Agreement;

6          d.    *Re-Lit* purports to contain re-mastered versions of the master
7  recordings as they appeared on *The Chronic*;

8          e.    The cover of *Re-Lit* contains different artwork than *The Chronic*;

9          f.    Without plaintiff's consent or pre-knowledge, *Re-Lit* includes an
10  interview with plaintiff and photographs and video recordings of his likeness, voice,
11  and performances, in a further effort falsely to associate plaintiff with *Re-Lit*, the
12  bogus "re-master" of *The Chronic*, and the sale of the additional material contained
13  on *Re-Lit*.

14          g.    Without plaintiff's consent, and knowing it to be untrue,
15  defendants have falsely advertised to the public that the fraudulent "re-mix" of *The*
16  *Chronic* in *Re-Lit* is "the way Dre wanted" the recording to be heard.

17     **F.**    **Defendant's Other Breaches of the 1991, 1992 and 1996**
18            **Agreements**

19          **1.**    **Failure to Account and Pay Royalties**

20     38.    Defendants have breached the 1991, 1992 and 1996 Agreements by
21  failing and refusing to account to plaintiff for Producer Royalties, *The Chronic*
22  Royalties, or any of the other royalties due him, and have failed to pay mechanical
23  royalties to plaintiff's publisher.

24          **2.**    **Digital Distribution of Dre Recordings**

25     39.    Defendants have also breached the 1996 Agreement by digitally
26  distributing *The Chronic*.

27  / / /

28  / / /

1       **3.**    **Inclusion of Dre Recordings in More than One "Greatest**

2             **Hits" or "Best of" Album**

3       40.    Since acquiring Death Row defendants have continued to sell and

4 distribute a compilation album entitled *Death Row's Greatest Hits* which included

5 several of the sound recordings from *The Chronic*, such as "Nuthin' but a G Thang,"

6 "Let Me Ride," "Lil' Ghetto Boy," and "Stranded on Death Row."  That album

7 constituted the one Death Row "Greatest Hits" or "Best of" album permitted under

8 the 1996 Agreement.

9       41.    In breach of the 1996 Agreement, defendants have also continued to

10 distribute the following Death Row albums that contain plaintiff's sound recordings

11 from *The Chronic* in violation of the 1996 Agreement in the following additional

12 "greatest hits" type packages (collectively, the "Unauthorized Greatest Hit

13 Packages"):

14          a.    *The Very Best of Death Row*, which includes "Nuthin' But a G'

15 Thang" and "Let Me Ride" from *The Chronic*;

16          b.    *15 Years on Death Row*, which includes "Nuthin' but a

17 G Thang," "Let Me Ride" and "Lil' Ghetto Boy" from *The Chronic*; and Chronicles:

18 Death Row Classics;

19          c.    *The Death Row Singles Collection*, which includes "Nuthin' But

20 a G Thang," and "Let Me Ride"; and

21          d.    *Dr. Dre – Chronicles Deluxe: Death Row Classics*, which

22 includes "Nuthin But a G Thang" and "Let Me Ride," unauthorized videos featuring

23 plaintiff's performances and sound recordings, and the wrongful, unauthorized use

24 of plaintiff's name and likeness.

25                   **FIRST CLAIM FOR RELIEF**

26         **(Breach of Contract Against All Defendants)**

27       42.    Plaintiff realleges and incorporates by reference paragraphs 1 through

28 41, inclusive above, as though fully set forth.

43.     Plaintiff performed all conditions, covenants and promises required on his part to be performed under the 1991, 1992 and 1996 Agreements, except those that were waived or that were rendered impossible to perform.

44.     Defendants have breached the 1991, 1992 and 1996 Agreements by releasing and distributing *The Chronic* and the other Dre Recordings in manners in which they had not been released or distributed as of the date of the 1996 Agreement; and by failing and refusing to account for and pay any of the royalties due plaintiff under the Agreements.

45.     As a result of defendants' breaches of the 1991, 1992 and 1996 Agreements plaintiff has suffered damages including, but not limited to, unpaid royalties, lost sales of Dre Recordings, and harm to his reputation, all in an amount to be proved at trial, but which plaintiff is informed and believes is in excess of $75,000, plus interest at the legal rate.

## SECOND CLAIM FOR RELIEF

### (False Advertising -- Lanham Act, 15 U.S.C. § 1125(a)

### Against All Defendants)

46.     Plaintiff realleges and incorporates by reference paragraphs 1 through 45, inclusive above, as though fully set forth.

47.     Plaintiff is the registered owner of the "Dr. Dre" Mark, Registration numbers Nos. 2275314, 2271448, 2271449, and 2271450 (the "Mark").

48.     Defendants' use of the Mark and of plaintiff's name and likeness on and in connection with the marketing, distribution, and sale of *Re-Lit* and the Unauthorized Greatest Hit Packages, and in promoting itself and other merchandise, is and was likely to, intended to, did, and will continue to confuse and mislead the public and misrepresent and create the false impression that the *Re-Lit* and the Unauthorized Greatest Hits Packages were authorized, approved, endorsed, sponsored, connected or affiliated with plaintiff.

///

49.    Plaintiff never authorized, approved, endorsed, or sponsored *Re-Lit* or the Unauthorized Greatest Hit Packages and never authorized, approved, or consented to defendants' use of his name, likeness, or Mark on or in connection with them, or at all, except as narrowly permitted in the 1996 Agreement.

50.    As a direct and proximate result of defendants' conduct, plaintiff has been damaged and will continue to be damaged in an amount to be proven at trial.

51.    Pursuant to 15 U.S.C. §§ 1116(a), 1118, and 1125(a), plaintiffs is entitled to an Order enjoining defendants from marketing, distributing, or selling *Re-Lit* and the Unauthorized Greatest Hit Packages and impounding and destroying all copies of and marketing materials pertaining to them.

52.    Pursuant to 15 U.S.C. § 1117(a), plaintiff is entitled to an Order: (a) requiring defendants to account for and pay to plaintiffs all profits derived by defendant from their conduct alleged herein, to be increased according to applicable provisions of law, and (b) awarding all damages sustained by plaintiff and caused by defendants.

53.    Defendants' conduct alleged herein was intentional, egregious, and without foundation in law and, therefore, under 15 U.S.C. § 1117(a) plaintiff is entitled to an award of treble damages against defendants, and each of them.

54.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), thereby entitling plaintiff to an award of reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF

### (Trademark Infringement—Lanham Act, 15 U.S.C. § 1114

### Against All Defendants)

55.    Plaintiff realleges and incorporates by reference paragraphs 1 through 54, inclusive above, as though fully set forth.

56.    Without plaintiff's permission or consent, defendants have engaged in the unauthorized use in commerce of reproductions, counterfeits, copies and/or imitations of plaintiff's registered trademarks in connection with defendants'

1  advertising, distribution, offering for sale, and sales of *Re-Lit* and the Unauthorized

2  Greatest Hits Packages, and in their promotion of their business and other

3  merchandise.

4        57.    Defendants' unauthorized use of plaintiff's trademarks in commerce on

5  and in connection with *Re-Lit* and the Unauthorized Greatest Hits Packages, and in

6  their promotion of themselves and their other merchandise, is and was likely to

7  cause confusion, or to cause mistake, or to deceive the public, as described above, in

8  violation of the Lanham Act, 15 U.S.C. § 1114(1).  Defendants have committed

9  these acts with the knowledge and intent that their use of plaintiff's trademarks

10  would cause confusion, deception, or mistake.

11        58.    As a direct and proximate result of defendants' willful infringing

12  conduct as described above, plaintiffs have been damaged and will continue to be

13  damaged in amounts to be proven at trial.  Defendants' infringing conduct entitles

14  plaintiff to recover his actual damages, trebled, together with defendants' profits,

15  and plaintiff's attorney fees and costs.

16        59.    Plaintiff is entitled to a permanent injunction to prevent future

17  infringing conduct and to the seizure and return of all copies of *Re-Lit* and the

18  Unauthorized Greatest Hits Packages, and all promotional, advertising, marketing

19  and other material related thereto.

20                        **FOURTH CLAIM FOR RELIEF**

21              **(Trademark Dilution-- Lanham Act, 15 U.S.C. § 1125(c)**

22                            **Against All Defendants)**

23        60.    Plaintiff realleges and incorporates by reference paragraphs 1 through

24  59, inclusive above, as though fully set forth.

25        61.    Plaintiff's Mark is a famous and extremely recognizable and distinctive

26  mark used in interstate commerce in the United States.  Defendants began selling

27  *Re-Lit* and the Unauthorized Greatest Hits Packages after the Mark was famous.

28  / / /

62.   Defendants' use of the Mark on and in connection with *Re-Lit* and the Unauthorized Greatest Hit Packages, and in their promotion of their business and other merchandise, is likely to dilute and detract from the distinctiveness of the Mark with resulting damage to plaintiff and to the substantial business and goodwill symbolized by the Mark.

63.   Defendants' conduct in marketing, distributing, and selling *Re-Lit* and the Unauthorized Greatest Hit Packages, and in their promotion of their business and other merchandise, is and was willfully intended to trade on plaintiff's reputation or to cause dilution of the Mark, and hence plaintiff is entitled to damages and other remedies under 15 U.S.C. § 1125(c)(2) and to a permanent injunction to prevent future infringing conduct.

## **FIFTH CLAIM FOR RELIEF**
### **(Misappropriation of Common Law Right of Publicity Against All Defendants)**

64.   Plaintiff realleges and incorporates by reference paragraphs 1 through 63, inclusive above, as though fully set forth.

65.   By using plaintiff's name and likeness on and in connection with *Re-Lit* and the Unauthorized Greatest Hit Packages, and in defendants' promotion of their business and other merchandise, without authority or permission from plaintiff, defendants are and have been improperly trading on plaintiff's fame, recognition, and goodwill in order to sell defendants' products in violation of plaintiff's rights as the owner of his common law rights of publicity for merchandise.  Defendants have misappropriated plaintiff's name and likeness for their benefit and commercial advantage, without permission or consent from plaintiff, and without compensating plaintiff for such use.

66.   Plaintiff has been damaged by defendants' misappropriation of his common law rights of publicity in and to his name and likeness in an amount according to proof at the time of trial.

1       67.    Plaintiff seeks temporary, preliminary, and permanent injunctive relief

2   in order to stop any further violations of plaintiff's rights of publicity.

3       68.    Defendants acted with willful and conscious disregard of plaintiff's

4   rights and interests, with the intent to benefit defendants, and each of them, and with

5   the intent to defraud plaintiff and deprive him of his rights, thereby entitling plaintiff

6   to an award of punitive damages against defendants in order to punish defendants

7   and to deter similar misconduct in the future.

8   **SIXTH CLAIM FOR RELIEF**

9   **(Violation of California Civil Code Section 3344**

10   **Against All Defendants)**

11       69.    Plaintiff realleges and incorporates by reference paragraphs 1 through

12   68, inclusive above, as though fully set forth.

13       70.    Defendants are and at all relevant times have been knowingly using

14   plaintiff's name and likeness for their commercial advantage on and in connection

15   with *Re-Lit,* the Unauthorized Greatest Hits Packages, and in promoting itself and its

16   other merchandise, without plaintiff's permission or consent, including to advertise

17   and market *Re-Lit* and the Unauthorized Greatest Hits Packages and to promote their

18   business and to solicit sales of those albums and other merchandise.  There is a

19   direct connection between defendants' unauthorized use of the plaintiff's name and

20   likeness and defendants' commercial purpose in promoting sales of the *Re-Lit* and

21   the Unauthorized Greatest Hits Packages, as well as in promoting defendants'

22   business and their sales of other merchandise.

23       71.    Plaintiff has been damaged and will continue to be damaged by

24   defendants' unauthorized use of plaintiff's name and likeness in an amount

25   according to proof, including statutory damages under California Civil Code section

26   3344, as applicable, or plaintiffs' actual damages, whichever are greater, plus

27   defendants' profits from their unauthorized use of plaintiff's name and likeness.

28   / / /

1    72.    Defendants acted with willful and conscious disregard of plaintiff's

2  rights and interests, with the intent to benefit defendants, and each of them, and with

3  the intent to defraud plaintiff and deprive him of his rights, thereby entitling plaintiff

4  to an award of punitive damages against defendants in order to punish defendants

5  and to deter similar misconduct in the future.

6                    **SEVENTH CLAIM FOR RELIEF**

7      **(Unfair Competition, California Bus.& Prof. Code § 17200 et seq.**

8                        **Against All Defendants)**

9    73.    Plaintiff realleges and incorporates by reference paragraphs 1 through

10  72, inclusive above, as though fully set forth.

11    74.    Defendants' wrongful acts described herein constitute unlawful, unfair,

12  and fraudulent business practices and misleading advertising under California

13  Business &Professions Code § 17200 et seq.

14    75.    Plaintiff has been damaged and will continue to be damaged by

15  Defendants' unlawful, unfair, and fraudulent business practices and misleading

16  advertising, as described above.

17    76.    Plaintiff is entitled to an injunction prohibiting defendants from

18  continuing the practices described above, and to restitution of all amounts acquired

19  by defendants by means of their acts of unfair competition.

20                    **EIGHTH CLAIM FOR RELIEF**

21              **(Constructive Trust Against All Defendants)**

22    77.    Plaintiff realleges and incorporates paragraphs 1 through 76, inclusive

23  above, as though fully set forth.

24    78.    By virtue of their wrongful conduct, defendants illegally received

25  money and profits that rightfully belonged to plaintiff.  Defendants are therefore

26  involuntary trustees, holding the gross receipts from their sales and revenues to the

27  extent attributable to their wrongful exploitation of *Re-Lit*, the Unauthorized

28  Greatest Hits Packages, the Mark, and plaintiff's name and likeness.  Defendants

1  hold such moneys and funds on behalf of and subject to a first and prior lien against

2  all others and in favor of plaintiff.  Upon information and belief, defendants hold

3  this illegally received money and profits in the form of bank accounts, real property,

4  and personal property that can be located and traced.  Plaintiff is entitled to the

5  remedy of a constructive trust in view of defendants' wrongful conduct alleged

6  hereinabove.

7         WHEREFORE, plaintiff prays for judgment, as follows:

8         1.      For damages according to proof, plus interest at the legal rate;

9         2.      For temporary, preliminary and permanent injunctive relief enjoining

10  defendants

11               (a) (i) from marketing, distributing, or selling *Re-Lit* and the

12  Unauthorized Greatest Hits Packages; (ii) impounding and/or requiring the

13  destruction of all copies of and marketing, promotional and other materials related

14  to them; (iii) requiring defendants to turn over to plaintiff all books and records,

15  including, but not limited to, all distribution and other agreements, accountings,

16  royalty and other statements, sales and distribution records, and all other things and

17  materials related to them; and (iv) requiring defendants to pay over to plaintiff all

18  monies and other things of value received on account of sales, distribution and/or

19  any other exploitation of them;

20               (b)     From any further use of the Mark and of plaintiff's name and

21  likeness and any other violations of plaintiff's rights of publicity;

22         5.      For an accounting;

23         6.      For a constructive trust;

24         7.      For treble damages;

25         8.      For punitive damages;

26  / / /

27  / / /

28  / / /

9.     For costs and attorney fees incurred herein; and

10.    For such other and further relief as the Court deems just and proper.

DATED:  February 10, 2010          KING, HOLMES, PATERNO & BERLINER, LLP

By: _____
        HOWARD E. KING
Attorneys for Plaintiff ANDRE YOUNG
p/k/a/DR. DRE

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable to a jury.

DATED:  February 10, 2010          KING, HOLMES, PATERNO & BERLINER, LLP

By: _____
        HOWARD E. KING
Attorneys for Plaintiff ANDRE YOUNG
p/k/a/DR. DRE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV10- 1019 CAS  (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [_] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ANDRE YOUNG pka DR. DRE, an individual

PLAINTIFF(S)

v.

WIDEAWAKE DEATH ROW ENTERTAINMENT LLC,a limited
liability company;WIDEAWAKE ENTERTAINMENT
GROUP,INC.,a corporation,WIDEAWAKE HOLDING
COMPANY,INC.,a corporation,                    DEFENDANT(S).
and DOES 1 through 10, inclusive

CASE NUMBER

CV10-01019-CAS (JEMx)

SUMMONS

TO:   DEFENDANT(S): <u>NAMED ABOVE</u>

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _____ , whose address is _____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **1 1 FEB 2010**

By: _____
MARILYN DAVIS
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )

ANDRE YOUNG pka DR. DRE, an individual

**DEFENDANTS**

WIDEAWAKE DEATH ROW ENTERTAINMENT LLC, a limited liability company; WIDEAWAKE ENTERTAINMENT GROUP, INC., a corporation, WIDEAWAKE HOLDING COMPANY, INC., a corporation and DOES 1 through 10, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Howard E. King, Esq.
King, Holmes, Paterno & Berliner, LLP
1900 Avenue of the Stars
25th Floor
Los Angeles, CA 90067
(310) 282-8989

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $** subject to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC Section 1331. Infringement of plaintiff's trademark

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV10-01019

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2
CCD-JS44

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). **IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes

If yes, list case number(s):

VIII(b). **RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ] A. Arise from the same or closely related transactions, happenings, or events; or

     [ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

     [ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

     [ ] D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

IX. **VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

   [ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

   [ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | All Defendants - Canada |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):    Howard E. King    Date February 10, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |