1  KING, HOLMES, PATERNO & BERLINER LLP
   HOWARD E. KING, ESQ., STATE BAR NO. 077012
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   ROTHSCHILD@KHPBLAW.COM
3  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
4  TELEPHONE: (310) 282-8989
   FACSIMILE:  (310) 282-8903
5
   Attorneys for Plaintiff
6  ANDRE YOUNG pka DR. DRE

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   ANDRE YOUNG pka DR. DRE, an individual,<br><br>12          Plaintiff,<br><br>13<br><br>14      vs.<br><br>15   WIDEAWAKE DEATH ROW ENTERTAINMENT LLC, a limited liability company; WIDEAWAKE<br>16   ENTERTAINMENT GROUP, INC., a corporation; WIDEAWAKE HOLDING<br>17   COMPANY, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>18<br>         Defendants.<br>19 | CASE NO. CV10-01019-CAS (JEMx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ETC., AND PLAINTIFF'S NOTICE OF COUNTER-MOTION AND COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF STEPHEN D. ROTHSCHILD AND DANIEL JENSEN**<br><br>[Filed concurrently with plaintiff's statement of genuine issues in opposition to defendants' motion for summary judgment or, in the alternative, for summary adjudication]<br><br>Date:      April 18, 2011<br>Time:     10:00 a.m.<br>Ctrm.:     5<br><br>Discovery Cut-Off:   None Set<br>Motion Cut-Off:     None Set<br>Trial Date:          None Set<br><br>Action Commenced: February 11, 2010 |

27        Plaintiff Andre Young ("plaintiff") respectfully submits the following

28  opposition to the motion of defendants Wideawake Entertainment Group, Inc. and

1828.115/414878.1

1 | Wideawake Death Row Entertainment, LLC (collectively, "defendants") for

2 | summary judgment or, in the alternative, for partial summary judgment.

3 | In addition,

4 | PLEASE TAKE NOTICE that, at the hearing on the instant motion, pursuant

5 | to Fed.R.Civ.P. 56(a), and as permitted in *Cool Fuel, Inv. V. Connett*, 685 F.2d 309,

6 | 311 (9th Cir. 1982), plaintiff hereby moves for partial summary judgment on the

7 | following issues presented in defendants' motion:

8 | 1. That paragraph 8 of the March 14, 1996 Agreement between Death

9 | Row Records, Inc., Marion "Suge" Knight and plaintiff (the "Agreement") does not

10 | prohibit plaintiff from obtaining specific performance and injunctive relief to

11 | enforce paragraph 3(c)'s requirement that defendants obtain plaintiff's written

12 | consent to distribution of *The Chronic* in any manner in which it was not distributed

13 | as of March 14, 1996;

14 | 2. That plaintiff is entitled to specific performance of the requirement in

15 | paragraph 3(c) of the Agreement that defendants obtain plaintiff's written consent to

16 | distribution of *The Chronic* in any manner in which it was not distributed as of

17 | March 14, 1996 and an injunction prohibiting defendants from utilizing any new

18 | manners of distribution without plaintiff's written consent;

19 | 3. That paragraph 8 of the Agreement does not prohibit plaintiff from

20 | obtaining a constructive trust over all of defendants' revenues from distributing *The*

21 | *Chronic* without plaintiff's consent in manners in which it was not distributed as of

22 | March 14, 1996;

23 | 4. That plaintiff is entitled to a constructive trust over all of defendants'

24 | revenues from distributing *The Chronic* in manners in which it was not distributed

25 | as of March 14, 1996;

26 | 5. That paragraph 8 of the Agreement does not prohibit plaintiff from

27 | obtaining an accounting of all royalties payable to him pursuant to paragraph 3(a) of

28 | the Agreement; and

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1                                              2

6.      That plaintiff is entitled to an accounting of all royalties payable to him pursuant to paragraph 3(a) of the Agreement.

Plaintiff's motion will be based on defendants' motion for summary judgment or, in the alternative, partial summary judgment; this notice; the memorandum of points and authorities and declarations of Stephen D. Rothschild and Daniel Jensen attached hereto; plaintiff's motion for partial summary judgment set to be heard concurrently with the instant motion; the Court's file herein; and on such other matter as may be presented at the hearing.

DATED:  March 28, 2011          KING, HOLMES, PATERNO & BERLINER, LLP

By: _____
          STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff ANDRE YOUNG
p/k/a/DR. DRE

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1                                      3

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

3           A.    To The Extent They Are Inconsistent, Paragraphs 3(c) and 3(a) Prevail over Paragraph 8, as a Matter of Law, Because Specific Terms Prevail Over

4                Inconsistent General Terms ................................................................................. 1

5           B.    Defendants' Interpretation of Paragraph 8 Is Inconsistent with the Purpose of Its "No Equity" Language ...................................................................... 3

6

7           C.    Even Without Equitable Remedies, Questions of Fact Remain as to the Amount of Plaintiff's Damages ...................................................................... 4

8    II.    THIS COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT THAT ENFORCING PARAGRAPH 3(c)'S SPECIFIC PROHIBITION AGAINST NEW

9         DISTRIBUTION MANNERS CONTROLS OVER PARAGRAPH 8'S "NO RESCISSION/TERMINATION" LANGUAGE ................................................... 5

10

11           A.    Plaintiff Is Entitled to Summary Judgment that Paragraph 8 Does Not Prohibit Equitable Remedies for Defendants' Breaches of Paragraph 3, and that Plaintiff Is Entitled to Those Remedies ................................................... 5

12

13           B.    Enforcing the Specific Terms in Paragraph 3 Prevails Over the General Language in Paragraph 8 ...................................................................... 6

14    III.    THE AMOUNT OF PLAINTIFF'S DAMAGES IS NOT LIMITED TO THE 18 PERCENT ROYALTY DEFENDANTS PAY FOR ALLOWABLE USES, AND

15         IS A QUESTION OF FACT .......................................................................................... 8

16    IV.    PLAINTIFF HAS NOT WAIVED HIS RIGHT TO EQUITABLE RELIEF OR DAMAGES BY ACCEPTING DEFENDANTS' VOLUNTARY PARTIAL

17         PAYMENTS ........................................................................................................................ 9

18    V.    CONCLUSION .................................................................................................................. 9

19

20

21

22

23

24

25

26

27

28

KING, HOLMES, PATERNO & BERLINER LLP

1828.115/414878.1

i

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Cool Fuel, Inv. v. Connett,*

4
     685 F.2d 309 (9th Cir. 1982) ................................................................ 5

5

*NL Industries, Inc. v. GHR Energy Corp.,*

6
     940 F.2d 957 (5th Cir. 1991.) ............................................................... 5

7

*Republic Pictures Corp. v. Rogers,*

8
     213 F.2d 662 (9th Cir. 1953) ................................................................ 6

9

**STATE CASES**

10

11
*Comunale v. Traders & General Ins. Co.,*
     116 Cal.App.2d 198 (1953) ................................................................... 6

12

13
*McNeely v. Claremont Management Co.,*
     210 Cal.App.2d 749 (1962) ................................................................... 7

14

15
*Metzler v. Thye,*
     163 Cal. 95 (1912) ................................................................................. 6

16

17
*National Ins. Underwriters v. Carter,*
     17 Cal.3d 380 (1976) ............................................................................ 6

18

19
*Prouty v. Gores Technology Group,*
     121 Cal.App.4th 1225 (2004) ............................................................... 6

20

21
**STATUTES**

22
California Civil Code section 1859 ............................................................... 6

23
California Civil Code section 3534 ............................................................... 6

24

25
**OTHER AUTHORITIES**

26
1 Witkin *Summary of California Law* (10th ed. 2005) Contracts, § 754, p. 845 ....... 7

27

28
23 *Cal.Jur.3d* (2008) Damages, § 19, p. 44 ................................................ 8

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1

ii

*Restatement Contracts* 2d, § 203 ......................................................................... 6

Schwarzer, et al., *Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions*,
¶ 14:328, p. 14-80.10 ....................................................................... 5

King, Holmes,
Paterno
& Berliner LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Paragraph 3(c) of the March 14, 1996 Agreement between plaintiff and Death Row Records, Inc. specifically and explicitly requires defendants to obtain plaintiff's consent before distributing plaintiff's album *The Chronic* in any manner in which it was not distributed before March 14, 1996. Paragraph 3(c) states, "[u]nless the parties hereto otherwise agree in writing, the foregoing masters shall only be distributed in the manners heretofore distributed." That language demonstrates that the original parties to the Agreement intended and bargained for plaintiff to have the rights (1) to decide whether to allow new manners of distribution of *The Chronic* and, (2) when he agreed to one, to negotiate the terms.

### A.    To The Extent They Are Inconsistent, Paragraphs 3(c) and 3(a) Prevail over Paragraph 8, as a Matter of Law, Because Specific Terms Prevail Over Inconsistent General Terms

Defendants contend that paragraph 8 prevents plaintiff from obtaining equitable relief to enforce paragraph 3(c) or a constructive trust over revenues derived from breaches of paragraph 3(c). In fact, paragraph 8 only bars plaintiff from seeking "rescission, termination, or any similar remedy"—none of which does plaintiff seek in the instant action. Paragraph 8 does not specifically bar plaintiff from pursing equitable relief, and it does not mention the remedies that plaintiff does seek—specific performance, injunctive relief, a constructive trust, and an accounting.

Still, defendants argue that, as long as they pay plaintiff the same royalty as they pay when they distribute *The Chronic* in manners that existed before March 14, 1996, paragraph 8 precludes any enforceable restrictions on how they can distribute the album because it contains generalized language that plaintiff's remedy "hereunder" shall be "an action for actual damages." Defendants want *carte blanche* to distribute plaintiff's recordings in any manner they chose, without regard to paragraph 3(c).

This Court should not only deny the instant motion, it should also exercise its discretion to grant summary judgment to plaintiff on the issues that defendants have raised.  The Agreement is subject to California law.  Under California law, when specific and general contract terms are inconsistent and applying a general term would defeat the parties' intent or render a specific term ineffective, the specific term controls.  The general language in paragraph 8 is inconsistent with the specific distribution limits in paragraph 3(c), because denying specific performance and a constructive trust would leave plaintiff with no effective remedy to enforce those limits.

Damages would not cure defendants' breaches of paragraph 3(c).  For example, plaintiff created *The Chronic* to be an artistic whole.  He testified, "I think it should stay as it is.  It is art to me.  It is a painted picture, and I don't think it should be distorted."  When asked at his deposition, "[b]ut clearly if they took the songs and changed the order or put it out with only half of the songs, that would be a bastardization that you would not want; correct?" plaintiff testified "that's a problem."  Plaintiff intended to prohibit Death Row from distributing *The Chronic* "other than as a complete album," with the exception of three songs that were released on vinyl as singles before March 14, 1996.  [PLAINTIFF'S FACT NO. 2.][1]

In addition to reserving plaintiff's right to decide the media on which *The Chronic* can be distributed, the Agreement also effectively reserved plaintiff's "moral rights" to the integrity of his work.  Removing plaintiff's right to disapprove new manners of distribution would allow defendants to repackage, reconfigure and otherwise manipulate *The Chronic* without regard for plaintiff's bargained for right to assure the work's artistic integrity.  For example, iTunes requires all songs to be

---

[1] References to "PLAINTIFF'S FACT NO." are to Plaintiff's other material facts in his statement of genuine issues and uncontroverted facts in opposition to defendants' instant motion and support of plaintiff's counter-motion for partial summary judgment.

1  downloadable individually as singles, contrary to plaintiff's desire that *The Chronic*

2  be distributed only as a complete album.  [PLAINTIFF'S FACT NO. 3.]

3        Defendants' other contention, that paragraph 8 prevents plaintiff from

4  obtaining an accounting to determine whether defendants have complied with their

5  royalty obligations, also fails.  Paragraph 3(a) of the Agreement specifically

6  provides that "[n]othing contained in this Agreement shall affect any artist's

7  royalties, mechanical royalties or producer's royalties due or to become due by

8  Death Row to Young on or after January 1, 1996."  Without rights to an accounting,

9  plaintiff would be without a remedy to assure defendants' compliance with plaintiff's

10  royalty rights.  That would undermine the clear and plain intent of paragraph 3(a)

11  and deny plaintiff the benefit of his bargain.

12      **B.**    **Defendants' Interpretation of Paragraph 8 Is Inconsistent with the**

13  **Purpose of Its "No Equity" Language**

14        In addition to violating fundamental rules of contract construction and being

15  contrary to the intent of the original parties with respect to paragraph 3(c),

16  defendants' construction of paragraph 8 also is inconsistent with why the parties

17  included paragraph 8 in the Agreement.  Paragraph 8 was in early drafts of the

18  agreement before the parties added paragraph 3(c).  [PLAINTIFF'S FACT NO. 4.]

19  While the parties were negotiating the Agreement, plaintiff was negotiating an

20  exclusive agreement directly with Death Row's distributor, Interscope Records.  As

21  part of the Interscope Agreement, Death Row assigned its rights to plaintiff's

22  services to Interscope.  The purpose of paragraph 8 was to prevent plaintiff from

23  using a breach of the Agreement by Suge Knight or Death Row as grounds to

24  rescind or terminate his agreement with Interscope.  [PLAINTIFF'S FACT NOS. 5-

25  6.]  That is why paragraph 8 specifically prohibits "rescission," "termination," and

26  "similar remedies," but not injunctive relief, specific performance, constructive

27  trust, or accountings.

28

1
2

**C.  Even Without Equitable Remedies, Questions of Fact Remain as to the Amount of Plaintiff's Damages**

3       Even if paragraph 8 did eliminate defendants' obligation to obtain plaintiff's

4   consent to new manners of distributing *The Chronic*, defendants' instant motion

5   would have to be denied.  The value of the rights that defendants violate by utilizing

6   new distribution methods is clear: the amount of defendants' revenues derived from

7   the breaches.  This Court should grant summary judgment that plaintiff is entitled to

8   those revenues.

9       Even if, as defendants contend (with no legal or evidentiary support) plaintiff

10  is only entitled to a "royalty" on revenues from distribution in new manners to

11  which plaintiff does not consent, a question of fact would remain as to the amount of

12  plaintiff's damages for defendants' systematic breaches of paragraph 3(c).  There is

13  no contract or law that would require plaintiff to accept the same royalty rate he

14  agreed to fifteen years ago.  Defendants would have to negotiate a new price based

15  on the circumstances existing now.

16      That price would be substantially more than an 18 percent royalty.  Plaintiff's

17  position in the music industry is different from what it was when he agreed to an 18

18  percent royalty in 1991, and he received a lot more from Death Row and Interscope

19  than defendants could ever provide.  Plaintiff now has his own record label and has

20  enjoyed enormous success as an artist and producer since 1996.  [PLAINTIFF'S

21  FACT NO. 7.]  Unlike Death Row and Interscope in the early 1990s, defendants

22  have nothing to offer plaintiff to induce him to accept an 18 percent royalty: no

23  recording budget, no advances, no overhead payments, no recording facilities, no

24  worldwide marketing and promotional machinery, no tour support, no standing in

25  the music industry, and no credibility with music consumers—no leverage

26  whatsoever.  [PLAINTIFF'S FACT NOS. 7, 8.]

27      In addition to having nothing to offer, defendants would come to the table

28  with huge negatives—a history of selling plaintiff's work in manners contrary to

King, Holmes,
Paterno
& Berliner LLP

1828.115/414878.1                                          4

1 | plaintiff's wishes and commercial interests, an announced intention to continue to

2 | disregard plaintiff, and its predecessor-in-interest's long history of similar disregard

3 | for artists' rights.  Accordingly, plaintiff is entitled either to specific enforcement,

4 | constructive trust, and an accounting or, at the very least, to a trial on damages, and

5 | defendants are not entitled to summary judgment.

**II.   THIS COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT THAT ENFORCING PARAGRAPH 3(c)'S SPECIFIC PROHIBITION AGAINST NEW DISTRIBUTION MANNERS CONTROLS OVER PARAGRAPH 8'S "NO RESCISSION/TERMINATION" LANGUAGE**

**A.   Plaintiff Is Entitled to Summary Judgment that Paragraph 8 Does Not Prohibit Equitable Remedies for Defendants' Breaches of Paragraph 3, and that Plaintiff Is Entitled to Those Remedies**

"If there are no factual issues and the opposing party is entitled to judgment as a matter of law, and the moving party had notice and an adequate opportunity to address the issues, summary judgment may be granted forthwith."  Schwarzer, et al., *Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions*, ¶ 14:328, p. 14-80.10, citing *Cool Fuel, Inv. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) and *NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir. 1991.)

For example, in *Cool Fuel, Inc.*, 685 F.2d at 311, the Ninth Circuit held as follows:

> It is, nevertheless, true that the overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party.

In this case, this Court should grant partial summary judgment to plaintiff that paragraph 8 does not operate to cancel his right to an accounting to determine royalties due under paragraph 3(a) or his rights to specific performance and a constructive trust under paragraph 3(c), and that he is entitled to those remedies.

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1

5

**B.    Enforcing the Specific Terms in Paragraph 3 Prevails Over the General Language in Paragraph 8**

California law governs the Agreement.  (Agreement, ¶ 5; see also *Republic Pictures Corp. v. Rogers*, 213 F.2d 662, 664(9th Cir. 1953).  California Civil Code section 1859 provides, in pertinent part, that

> … in the construction of the instrument the intention of the parties is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former.  So a particular intent will control a general one that is inconsistent with it.

Similarly, *Restatement Contracts* 2d, § 203, states that an interpretation of a contract that gives it meaning is preferable over one that "leaves a part … of no effect," and that "specific terms and exact terms are given greater weight than general language."

For example, in *Prouty v. Gores Technology Group*, 121 Cal.App.4th 1225 (2004), the agreement pursuant to which defendants acquired plaintiffs' employer, a technology company, contained specific language granting certain rights to employees, and general language to the effect that the contract did not confer any rights or remedies on third parties.  The court held as follows:

> Section 6 of the amendment does conflict with section 10.5 of the stock purchase agreement, and as incorporated into the amendment by section 8(b) of the amendment. Under rules of contract construction, however, the mere existence of sections 10.5 and 8(b) does not end this matter. The latter two provisions cannot be harmonized with section 6. Sections 10.5 and 8(b) state generally no rights or remedies exist under the contract to third persons; section 6 expressly grants rights to specific third persons regarding their employment with GTG. ***In this circumstance, under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision.*** (Code Civ. Proc., § 1859; Civ.Code, § 3534; *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386, 131 Cal.Rptr. 42, 551 P.2d 362, see *Metzler v. Thye* (1912) 163 Cal. 95, 99, 124 P. 721; *Comunale v. Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 201, 253 P.2d 495.) Section 6 of the amendment thus is an exception to section 10.5 of the original contract and section 8(b) of the amendment, and the plaintiffs can enforce it.

KING, HOLMES, PATERNO & BERLINER LLP

1828.115/414878.1

1

2 (Emphasis added; see also, e.g., *McNeely v. Claremont Management Co.,* 210

3 Cal.App.2d 749, 753 (1962); 1 Witkin *Summary of California Law* (10th ed. 2005)

4 Contracts, § 754, p. 845.)

5        In the case at bar, paragraph 3(c) addresses a specific subject: requiring

6 plaintiff's written agreement to distribution of *The Chronic* in new manners. The

7 only way to enforce the limitation is by specific performance and injunctive relief as

8 to future distribution and a constructive trust as to past breaches. Monetary damages

9 are inadequate because they do not give plaintiff the bargained for control over the

10 manner in which his recordings are to be distributed.

11        Defendants' interpretation of paragraph 8 to encompass specific performance,

12 injunctive relief, constructive trust and accounting is also inconsistent with the plain

13 language of paragraph 8. Paragraph 8 does not mention distribution of plaintiff's

14 recordings or any other subject. Nor does it mention specific performance,

15 injunctions, constructive trusts or accountings.

16        In fact, Paragraph 8's limits specifically encompass only "the remedy of

17 rescission, termination or any similar remedy." Paragraph 8 states, "[t]he parties

18 irrevocably waive and relinquish any right now or hereafter existing to seek or

19 obtain *the remedy of rescission, termination or any similar remedy*." Paragraph 8

20 does not bar plaintiff from any other equitable remedies. The statement that

21 plaintiff's remedy is "actual damages," if literally enforced, would eviscerate the

22 specific limits in paragraph 3(c).

23        Defendants' interpretation of paragraph 8 also is inconsistent with the history

24 and overall structure of the Agreement. Paragraph 8 was in drafts of the Agreement

25 before the distribution limits in paragraph 3(c) were added. [PLAINTIFF'S FACT

26 NO. 4.] It was there to protect Death Row's distributor, Interscope. Simultaneous

27 with the Agreement, Interscope and plaintiff were negotiating an agreement for

28 plaintiff to provide his services to Interscope. Indeed, the parties to the Agreement

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1                                    7

1 | acknowledged that the Agreement was in part an inducement to plaintiff to enter

2 | into an agreement with Interscope.  Paragraph 1 of the Agreement provided, in

3 | pertinent part, as follows:

> Furthermore, as an inducement to Young to enter into a so-called label agreement and exclusive producer agreement with Interscope Records (the "Interscope agreement"), on terms and conditions to be agreed to solely by Young and Interscope Records, Death Row shall upon execution of the Interscope Young Agreements shall pay [sic] Young the sum of Two Million Nine Hundred Ninety Thousand ($2,990,000) Dollars. ... Young hereby irrevocably consents to Death Row's assignment to Interscope Records of any and all previously executed agreements on terms mutually acceptable to Death Row and Interscope Records.

[PLAINTIFF'S FACT NOS. 5-6.]

Paragraph 8 prevented plaintiff from using a breach of the Agreement by Death Row or Knight as a reason to terminate his obligation to sign with Interscope. Those words relate to the new agreement with Interscope, not plaintiff's existing Death Row recordings.

## III. THE AMOUNT OF PLAINTIFF'S DAMAGES IS NOT LIMITED TO THE 18 PERCENT ROYALTY DEFENDANTS PAY FOR ALLOWABLE USES, AND IS A QUESTION OF FACT

"Under California law, a plaintiff that prevails on a breach of contract claim should receive as nearly as possible the equivalent of the benefits of performance, meaning the plaintiff should be put in as good a position as he or she would have been had performance been rendered as promised. ..." 23 *Cal.Jur.3d* (2008) Damages, § 19, p. 44.

In this case, the only equivalent to the benefits of performance of defendants' duty to obtain plaintiff's written consent to new distribution manners are the revenues that defendants derive from exploiting new manners of distribution of *The Chronic* without plaintiff's consent.   The exact amount is a question of fact.

If this Court were to accept defendants' bald contention that plaintiff must accept a royalty for unauthorized distribution of *The Chronic*, the amount still would

1   be a question of fact.  There is no legal or factual reason to believe that the amount

2   of such damages is the same as the 18 percent royalty for permitted distribution of

3   *The Chronic*.  When the parties agreed to 18% in the early 1990s, Death Row and its

4   distributor, Interscope, did not just give plaintiff royalties.  They funded recording

5   expenses and provided promotional and marketing resources, tour support,

6   entertainment industry opportunities, and other support.  The royalty was only part

7   of the deal.  [PLAINTIFF'S FACT NO. 9.]  Defendants can provide none of that

8   consideration and have a history of distributing plaintiff's recordings in new

9   manners without his consent.  They would have to pay much more than an 18

10  percent royalty to compensate plaintiff for the damage done.

11  **IV.   PLAINTIFF HAS NOT WAIVED HIS RIGHT TO EQUITABLE**
        **RELIEF OR DAMAGES BY ACCEPTING DEFENDANTS'**
12      **VOLUNTARY PARTIAL PAYMENTS**

13          Defendants' argument, at 11:19-12:10, that plaintiff's acceptance of partial

14  compensation for defendants' breach of the Agreement bars him from other relief,

15  also is wrong.  Defendants paid that amount after plaintiff commenced the instant

16  action, when defendants were on notice of plaintiff's claims.  Defendants' payment

17  of an arbitrary 18 percent "royalty" after it is on notice of breach is not a cure.  See

18  plaintiff's motion for summary judgment, Memorandum of Points and Authorities,

19  Section V, 11:13-13.20.

20  **V.   CONCLUSION**

21          For each of the foregoing reasons, and for each of the reasons set forth in

22  plaintiff's motion for summary judgment set to be heard concurrently with the

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

King, Holmes,
Paterno
& Berliner LLP

1828.115/414878.1                                              9

1  instant motion, this Court should deny instant motion and grant plaintiff summary

2  judgment on his motion and on the issues raised in the instant motion.

3  DATED:  March 28, 2011          KING, HOLMES, PATERNO & BERLINER, LLP

4

5  By: _____

6  STEPHEN D. ROTHSCHILD
   Attorneys for Plaintiff ANDRE YOUNG
   p/k/a/DR. DRE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1                          10

1
## DECLARATION OF STEPHEN D. ROTHSCHILD

2      I, Stephen D. Rothschild, declare:

3      1.      I am an attorney admitted to practice before this Court and am a partner

4   of King, Holmes, Paterno & Berliner, LLP, attorneys for plaintiff Andre Young

5   herein. I have personal knowledge of the matters below and could and would testify

6   competently to them if asked.

7      2.      I make this declaration in support of plaintiff's opposition to the motion

8   for summary judgment of defendants Wideawake Death Row Entertainment LLC

9   and Wideawake Entertainment Group, Inc.

10      3.      On January 25, 2011, I defended the deposition of my partner Peter T.

11   Paterno in this case. Attached hereto as Exhibit "1" are true and correct copies of

12   the face page and pages 113-114 and 215 of the transcript of Mr. Paterno's

13   deposition.

14      4.      I took the deposition of defendants' officer John Payne herein on July 7,

15   2010. Attached hereto as Exhibit "2" are true and correct copies of the face page

16   and pages 23-25 of the transcript of Mr. Payne's deposition.

17      5.      Plaintiff has been a client of my firm since 1996, and I have been an

18   attorney at my firm with responsibility for plaintiff's representation since 1997.

19   Throughout that period plaintiff has been the chief executive officer of his record

20   label, Aftermath Entertainment. Attached hereto as Exhibit "3" is a March 28, 2011

21   print out of the Wikipedia article on Aftermath.

22      6.      Attached hereto as Exhibit "4" is a true and correct copy of my office's

23   file copy of the Agreement Death Row Records furnishing plaintiff's services and

24   Interscope Records dated as of November 1, 1992.

25      7.      Attached hereto as Exhibit "5" is a true and correct copy of an early

26   / / /

27   / / /

28   / / /

KING, HOLMES,
PATERNO
& BERLINER LLP

1  draft of the March 14, 1996 Agreement between Death Row Records, Inc., Marion

2  "Suge" Knight, and plaintiff.

3      I declare under penalty of perjury under the laws of the United States that the

4  foregoing is true and correct.  Executed on March 28, 2011 at Los Angeles,

5  California.

6

7                                                Stephen D. Rothschild

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

King, Holmes,
Paterno
& Berliner LLP

1828.115/414878.1                                12

# DECLARATION OF DAN JENSEN

I, Dan Jensen, declare:

1.      I am a paralegal at King, Holmes, Paterno & Berliner, LLP, attorneys for plaintiff Andre Young herein.  I have personal knowledge of the matters below and could and would testify competently to them if asked.

2.      I make this declaration in support of plaintiff's opposition to the motion for summary judgment of defendants Wideawake Death Row Entertainment LLC and Wideawake Entertainment Group, Inc. (collectively, "defendants").

3.      I have been a paralegal for 5 years working on transactional matters for artists and others in the music industry, and have a paralegal certificate from UCLA's Attorney Assistant Training Program.  Prior to my position here at King, Holmes, Paterno & Berliner, LLP, I spent approximately 12 years gaining experience in various aspects of the music industry through positions with Sony Music, V2 Records, Virgin Megastores, and Universal Music Group, among others.

4.      My responsibilities at my firm include processing agreements by which record labels and others license recordings to iTunes under the supervision of attorneys at my firm.  Through that work and my other experience in the music industry, I am aware that iTunes requires grantors of download rights to grant it the right to sell downloads of individual songs in "single" format as well as in multi-track "album" format.  Attached hereto as Exhibit "6" are excerpts from various iTunes music download sales agreements that include that requirement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on March 28, 2011 at Los Angeles, California.

Dan Jensen

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2011, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ETC., AND PLAINTIFF'S NOTICE OF COUNTER-MOTION AND COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF STEPHEN D. ROTHSCHILD AND DANIEL JENSEN** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DINA WEBB

KING, HOLMES,
PATERNO
& BERLINER LLP

1828.115/414878.1